IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

TEDDY R. VANLANDINGHAM                                       PLAINTIFF

VS.                                                        CIVIL ACTION NO. 3:09CV5-WAP-DAS

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY                             DEFENDANT

## REPORT AND RECOMMENDATION

This case involves an application pursuant to 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of Social Security ("Commissioner") denying the application of the claimant, Teddy R. Vanlandingham, for a period of disability, disability insurance benefits, and supplemental security income. The parties have not consented to have a magistrate judge conduct all the proceedings in this case; therefore, the undersigned submits this report and recommendation to the United States District Judge.

## I. PROCEDURAL AND FACTUAL HISTORY

The claimant filed applications for disability benefits under Titles II and XVI of the Social Security Act on March 9, 2006. The applications were denied initially and upon reconsideration, and the claimant requested and was granted a hearing before an administrative law judge ("ALJ"). In a hearing decision dated August 1, 2008, the ALJ found the claimant was not disabled as defined in the Social Security Act. The ALJ's hearing decision became perfected as the final decision of the Commissioner when the Appeals Council denied the claimant's request for review on November 21, 2008. The Commissioner's decision is now ripe for review under section 205(g) of the Social Security Act. *See* 42 U.S.C. § 405(g).

The claimant was born in 1961, and was a younger individual of 47 at the time of the

ALJ's decision. He completed the sixth grade in school, failing two grades before quitting. His past relevant work was as a motel maintenance worker. In his initial disability report, he alleged he became disabled on April 24, 1997, due to breathing problems, pain in his feet, and pain in his left hip and leg.

The ALJ determined the claimant had severe impairments including a back disorder, hypertension, dyspnea, status post left lower pulmonary nodule excision, obesity, and affective mood disorder. He found the claimant did not have an impairment or combination of impairments that met or equaled any one of the listed impairments. He further determined that the claimant had a residual functional capacity ("RFC") that allowed him to lift/carry ten pounds occasionally and frequently, stand/walk for two hours, and sit for a total of six hours during an eight-hour workday. He could occasionally climb, balance, stoop, crouch, kneel, and crawl. He had to avoid exposure to temperature extremes, chemicals, dust, fumes, and odors. Due to his affective mood disorder, pain, and potential medication side effects, he was limited to jobs that did not demand attention to detailed or complicated job tasks or instructions. He was also limited to jobs that did not require close cooperation and interaction with coworkers, and he could not perform a job that required cooperation and interaction with the general public. He could maintain attention and concentration for two hours at a time and adapt to changes in the work place on a basic level.

Based on this RFC, the ALJ concluded that the claimant could not perform his past work in motel maintenance. Nevertheless, based on the testimony of a vocational expert ("VE") the ALJ found that a person of the claimant's age, educational background, work history, and RFC could perform other work that existed in significant numbers in the national economy, including

jobs as an escort vehicle driver and optical driller.

## II. LAW AND STANDARD OF REVIEW

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[1] The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability, and if the claimant is successful in sustaining his burden at each of the first four levels then the burden shifts to the Commissioner at step five.[2] First, the claimant must prove he is not currently engaged in substantial gainful activity.[3] Second, the claimant must prove his impairment is "severe" in that it "significantly limits his physical or mental ability to do basic work activities . . . ."[4] At step three the ALJ must conclude the claimant is disabled if he proves that his impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.02 (1998).[5] Fourth, the claimant bears the burden of proving he is incapable of meeting the physical and/or mental demands of his past relevant work.[6] If the claimant is successful at all four of the preceding steps, the burden shifts to the Commissioner to prove, considering the claimant's residual functional capacity, age, education and past work experience, that he is capable of performing

---

[1]*See* 20 C.F.R. §§ 404.1520 (2008).

[2]*Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).

[3]20 C.F.R. §§ 404.1520(b) (2008).

[4]20 C.F.R. §§ 404.1520(c) (2008).

[5]20 C.F.R. §§ 404.1520(d) (2008). If a claimant's impairment meets certain criteria, that claimant's impairments are of such severity that they would prevent any person from performing substantial gainful activity. 20 C.F.R. §§ 404.1525 (2008).

[6]20 C.F.R. §§ 404.1520(e) (2008).

other work.[7] If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he cannot, in fact, perform that work.[8]

This court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)). The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not reweigh the evidence, try the case de novo, or substitute its own judgment for that of the Commissioner. *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988), even if it finds that the evidence preponderates against the Commissioner's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell*, 862 F.2d at 475. If the Commissioner's decision is supported by the

---

[7] 20 C.F.R §§ 404.1520(f)(1) (2008).

[8] *Muse*, 925 F.2d at 789.

4

evidence, then it is conclusive and must be upheld. *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994).

### III. ANALYSIS

The claimant presents five grounds for this appeal: 1) The ALJ erred by assigning little or no weight to the opinions of the claimant's mental health providers; 2) The ALJ erred by failing to develop the record; 3) The ALJ's hypothetical question propounded to the VE failed to list all of the claimant's impairments; 4) The VE erred by listing jobs outside the RFC formulated by the ALJ; and 5) The ALJ erred by blaming the claimant for noncompliance with treatment. The court will consider each issue in turn.

#### 1. Failure to Consider Opinions of Mental Health Providers

The claimant first contends the ALJ erred by assigning little or no weight to the opinions of his mental health providers and that he ignored "competent" evidence of anxiety, depression, and the "B" criteria.

The claimant began outpatient treatment at TMHC (The Louisiana Center) in May 1999. Intake records show that he was incarcerated at the time. A psychiatric evaluation performed at TMHC in June 1999 indicates that the claimant's chief complaint was depression. The claimant reported that he had come from a dysfunctional family and suffered physical and mental abuse as a child and that he was chronically angry and depressed. Upon mental status evaluation, Dr. W. H. Smith concluded that the claimant suffered from major depressive disorder (recurrent, severe) and post traumatic stress disorder (PTSD). Dr. Smith noted the claimant's global assessment of

functioning ("GAF") was 45.[9]

A progress note dated April 18, 2000 indicates that the claimant was released from jail on June 20, 1999 and that he had been given medications and had taken them until he was out, but that he didn't know he was to return to TMHC. It was noted that the claimant was to continue treatment and medications and return in four weeks. Notes dated May 17, 2000 and June 15, 2000 indicate that the claimant failed to show for appointments scheduled for those dates. However, on November 28, 2000, the claimant returned as a walk-in patient complaining of anger, a depressed mood, poor concentration, suicidal ideations and that he needed to be back on his medications. An appointment was scheduled for the claimant to see Dr. Smith on December 1, 2000. During that followup visit, it was noted that the claimant had not been on medication since May 2000 and that he complained of not being able to get along with his family members and not being able to keep a job. He also complained that he was experiencing difficulty focusing, was forgetful, suffered from poor concentration, and was having crying spells. It was noted that the claimant was to continue treatment and medications, and he was given counseling on his medications. A January 4, 2001 note indicates he was given medications and that his smoking had decreased from 3 packs a day to 1 ½ packs. However, by January 29, 2001, the claimant was a no show again. He was finally discharged on April 9, 2001, but it was noted that the date of last contact was January 4, 2001.

Over five years later, on September 15, 2006, the claimant presented to Communicare for

---

[9]A rating of 45 on the GAF scale indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). *See* American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 1994).

6

treatment. He complained of a depressed mood, disturbed sleep, and a diminished ability to concentrate, among other things. It was noted that the claimant appeared to be motivated for treatment. An intake assessment showed that his appearance and grooming were appropriate; he was oriented to person, place, time and situation; he denied homicidal and suicidal ideations; he had an appropriate affect; and he was cooperative throughout the interview. It was further noted that there was no evidence of impairment in his insight or memory.

The ALJ found that the claimant's mental impairment did not meet or medically equal the criteria of listing 12.04, particularly because the "paragraph B" criteria was not met.[10] Specifically, he noted the claimant had experienced only mild to moderate restriction of activities of daily living, difficulties in maintaining social functioning, concentration, persistence, or pace; and, there were no repeated episodes of decompensation of extended duration. Under the "B" criteria, the claimant must show "marked" limitation in at least two areas of functioning. The

---

[10]Listing 12.04 addresses "affective disorders" and provides that a claimant is disabled if he has a sufficiently severe "disturbance of mood, accompanied by a full or partial manic or depressive syndrome." The listing states that "[t]he required level of severity for these disorders is met when the requirements in both [subsections] A and B are satisfied." Subsection B requires evidence of at least two of the following limitations:

    1. Marked restriction of activities of daily living; or

    2. Marked difficulties in maintaining social functioning; or

    3. Marked deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere); or

    4. Repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors).

20 C.F.R. pt. 404, subpt. P, app. 1, listing 12.04.

Commissioner has defined the term "marked" to indicate a degree of limitation that is more than "moderate" and "less than extreme." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00 C. Moreover, the term suggests a degree of limitation that interferes seriously with the claimant's ability to function independently, appropriately, effectively, and on a sustained basis. *Id*.; 20 C.F.R. § 416.920a. By contrast, the term "extreme" represents a degree of limitation that is incompatible with the ability to do any gainful activity. 20 C.F.R. § 416.20a(c)(4).

The ALJ's finding that the claimant's impairment did not meet Listing 12.04 is consistent with the claimant's own testimony and a report submitted by the claimant's friend of 30 years, Terry Nelson, that the claimant watched television regularly, washed dishes, did laundry, went grocery shopping, drove, and handled his own finances. Additionally, the ALJ pointed out that the evidence showed that the claimant maintained relationships with his friend and girlfriend, responded appropriately to treating and examining sources, and had had no episodes of decompensation. The record supports these findings. Ultimately, the claimant has simply failed to point to any medical opinion or findings by his mental health care providers establishing the "marked" restrictions necessary to meet the "B" criteria for listing 12.04.[11] Therefore, the court finds the claimant's arguments are without merit with respect to the ALJ's finding at step 3.

The claimant's arguments also fail with regard to the ALJ's step 4 determination. First, the majority of the "medical evidence" the claimant relies upon to support his argument consists of his subjective statements made to mental health evaluators or counselors about his symptoms

---

[11]It is the claimant's burden to demonstrate that his condition satisfies the criteria in a medical listing. *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994). These criteria are "demanding and stringent." *Id.* "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria." *Sullivan v. Zebley,* 493 U.S. 521, 530 (1990).

8

and their observations, not objective medical findings and medical opinions.[12] Second, the claimant has failed to establish any real conflict between the ALJ's RFC finding and the findings or opinions of any mental health care provider, treating or otherwise. In addition to specific exertional limitations, the ALJ found that because of the claimant's affective mood disorder, pain, and potential medication side effects, he was limited to jobs that did not demand attention to detail or complicated job tasks or instructions. He further found that the claimant was limited to jobs that did not require close cooperation and interaction with coworkers and that he could not perform a job that required cooperation and interaction with the general public. Lastly, the ALJ found the claimant could maintain attention and concentration for only two hours at a time and that he could adapt to changes in the work place on a basic level. These findings indicate that the ALJ neither rejected nor ignored the medical evidence of the claimant's severe mental impairment. Moreover, the claimant has pointed to no medical or other competent evidence of record suggesting greater limitation in mental functioning than accounted for in the ALJ's RFC finding. Accordingly, the claimant's first assignment of error is without merit.

## 2. Failure to Fully Develop the Record

Next, the claimant contends the ALJ failed to adequately develop the record. Specifically, the claimant contends the ALJ should have ordered diagnostic tests to establish joint and spinal impairments and a mental consultative examination. An ALJ has a basic obligation to develop a full and fair record. *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984). However, a court will not reverse for the ALJ's failure to develop the record unless the claimant can establish prejudice

---

[12]Even if the claimant's mental health counselors had expressed medical opinions about his condition, the opinions of mental health counselors generally do not constitute acceptable medical opinions. *See Vester v. Barnhart*, 416 F.3d 886, 890 (8th Cir. 2005).

9

as a result of the failure. *Bowling v. Shalala*, 36 F.3d 431, 437 (5th Cir. 1994). A claimant can establish prejudice by showing that the additional development could and would have adduced additional evidence that might have altered the ALJ's decision. *See id*.

First, with regard to the claimant's spinal impairment, he suggests the ALJ should have ordered diagnostic tests because the ALJ honed in on the fact that there were no radiographs, which made establishing a spine-related listing impossible. As noted above, it is the claimant's burden to prove that his condition meets the criteria for a listed impairment. And, the claimant, who was represented by counsel during the hearing, failed to do so in this case.[13] Even assuming, *arguendo*, that the ALJ was obligated to order additional tests, the claimant has failed to show any prejudice as a result of the failure.

The ALJ based his determination that the claimant's spinal impairment did not meet listing 1.04 partially upon the findings of Dr. Arthur Greenberg.[14] Dr. Greenberg's consultative

---

[13]If a claimant is unable to provide sufficient medical evidence, the ALJ may make a decision based on the evidence available. *Wren v. Sullivan*, 925 f.2d 123, 128 (5th Cir. 1991).

[14] Listing 1.04 states in pertinent part:

1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine) [or two other sets of symptoms not relevant here].

20 C.F.R. Pt. 404, Subpt. P.App. 1 § 1.04.

examination in May 2006 revealed only positive straight leg raising on the left in the supine position with no indication of atrophy or loss of pulses, reflexes, sensation, or motor strength. Additionally, though the records of the claimant's treating physician, Dr. Ramon Rosenkrans, noted diagnoses of chronic back and hip pain, the ALJ pointed out that Dr. Rosenkrans's examinations demonstrated no objective findings except positive straight leg raising on the right, trace pedal edema and a slight wheeze on expiratory in the left lung. Moreover, Dr. Rosenkrans's records failed to reveal any evidence of gait impairment despite the claimant's use of a cane. Lastly, the claimant points to no indication in the record of the required nerve root compression. *See Zimmerman v. Astrue*, 288 Fed.Appx. 931, 937 (5th Cir. 2008) (finding the claimant failed to meet burden of establishing the criteria for listing 1.04 where, despite evidence of pain radiating from back into leg, limited range of motion, and positive straight leg raising test, examination showed no sensory or reflex loss in lower extremities, full motor strength in all muscle groups and no indication of nerve root compression) . Accordingly, the claimant has failed to convince the court that had the ALJ ordered diagnostic testing, he would have adduced evidence that might have changed the result.

The claimant's argument is also misguided with respect to his mental impairment. The claimant has both failed to show that a consultative mental examination was necessary and that the ALJ's failure to order one prejudiced him. An ALJ may order a consultative examination at government expense in his discretion, but is not required to do so unless the evidence as a whole, medical and non-medical, reveals that one is necessary for the ALJ to make a determination regarding disability. 20 C.F.R. §§ 404.1519a(b), 416.919a(b)*; Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989). However, if the ALJ determines that the record contains substantial

evidence of the claimant's condition, he need not order any further examination. *Sims v. Apfel*, 224 F.3d 380, 381 (5th Cir. 2000).

The record in this case contains sufficient medical and non-medical evidence upon which to base a determination of the claimant's mental impairment. The ALJ pointed out that the claimant's failure to seek treatment, his failure to comply with treatment, and his activities of daily living belied a disabling mental impairment. However, as pointed out above, the ALJ's RFC finding adequately took into account the medical evidence of the claimant's severe mental impairment. Finally, the claimant has failed to make any argument or point to any evidence suggesting that had the ALJ ordered a consultative examination he could and would have adduced evidence that might have altered the result. Accordingly, this issue provides no ground for reversal.

### 3. Flawed Hypothetical

Here, the claimant complains that the ALJ's hypothetical question propounded to the VE failed to include all of his impairments. Specifically, the claimant contends that his "essential tremors" prohibited his being able to work as an optical driller because he did not possess "the degree of manual dexterity required to drill a hole through a lens." He further argues that his inability to turn his head to see what's coming while driving and his medication side-effects made it impossible to perform the job of escort vehicle driver. Lastly, he claims the ALJ nonchalantly dismissed the severity of his mental impairment, an argument the court has already rejected.

The ALJ posed hypothetical questions to the VE about what jobs a person with the claimant's limitations would be able to perform. His questions included all the claimant's limitations supported by the record, including the fact that he was limited to jobs that did not

demand attention to detailed or complicated job tasks or instructions; he could only perform jobs that did not require close cooperation and interaction with co-workers or the general public; and he could maintain attention and concentration for only two-hour periods at a time and adapt to changes in the work place on a basic level. The VE testified that the claimant could perform two jobs at the sedentary exertional level existing in significant numbers in the national economy: optical driller (2,000 jobs locally and 25,000 nationally) and escort vehicle driver (1,000 jobs locally and 25,000 nationally).

A hypothetical question need only list the claimant's limitations that are supported by the record. *See Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994). With respect to the claimant's contention that the ALJ failed to include his "essential tremor" in the hypothetical question propounded to the VE, the court finds it is without merit. The ALJ noted that Dr. Greenberg's consultative examination of the claimant revealed only "intermittent tremors" of the hands and feet. However, Dr. Greenberg's report also showed that there was no evidence of edema, atrophy, or loss of sensation, reflexes or strength. Furthermore, Dr. Greenberg concluded that the "claimant's work-related abilities [were] only mildly to moderately impaired due to shortness of breath *and the other objective findings"* (emphasis added). Accordingly, implicit in the ALJ's hypothetical was a finding that the claimant's intermittent tremors caused no real functional limitation. *See Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983) ("The mere presence of some impairment is not disabling per se. Plaintiff must show that she was so functionally impaired . . . that she was precluded from engaging in any substantial gainful activity." (citations omitted)); *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) (stating hypothetical should describe limitations not conditions because determining the effect of a condition is outside

the expertise of a vocational expert).

Next, as regards the claimant's claim that his medication side effects, i.e., drowsiness, etc., precluded any ability to perform the job of escort driver, this argument is without merit because the ALJ explicitly stated that he took into account the potential side effects of medication into in formulating the claimant's RFC.  Furthermore, it appears that the claimant cannot show he was prejudiced by the ALJ's failure to consider medication side-effects because the ALJ actually found that the medical evidence failed to document any complaints of medication side effects.

Finally, the claimant's attorney had an opportunity to correct any purported deficiencies in the ALJ's hypothetical question by mentioning or suggesting other impairments or limitations but failed to do so.  Accordingly, the ALJ's hypothetical was sufficient for this reason as well. *See Bordelon v. Astrue*, 281 Fed.Appx. 418, 423 n. 7 (5th Cir. 2008).

### 4. Jobs Outside Claimant's RFC

Here, the claimant contends that the Commissioner failed to meet his burden at step 5 because the VE picked jobs outside the RFC found by the ALJ.  Specially, he claims his limits on social functioning prohibited the "coordination requirements for the escort driver."  Also, the claimant contends that the RFC found by the ALJ did not allow him to meet the standing, writing and reasoning requirements for a job as an optical driller.  The claimant also re-hatches his argument that the ALJ did not adequately consider his mental impairments, a claim the court has already rejected.

"A vocational expert is called to testify because of his familiarity with job requirements and working conditions."  *See Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995) (citing *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986).  "The value of a vocational expert is that he [or

she] is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed." *Id.* (quoting *Fields*, 805 F.2d at 1170). In this case, the VE determined the availability of the escort vehicle driver and optical driller jobs based upon the ALJ's hypothetical question and by referring to the Dictionary of Occupational Titles ("DOT"). The ALJ's hypothetical required the VE to consider a person of the claimant's age and with his work history, education, and RFC as determined by the ALJ. The claimant's suggestion that the VE ignored his limitations in social functioning as it relates to the escort vehicle driver job has no merit. With respect to this job, the VE stated:

> This is sedentary exertional-level work, it's unskilled entry-level work, involves the ability to drive vehicles equipped with warning lights to escort trucks hauling wide loads . . . . There would be no interaction with the general public, and in fact very little interaction with . . . anyone . . . .

The claimant has provided the court with a copy of the O*NET Occupational Profile for the job of truck drivers, which is listed at the light exertional level. The court need only point out that this job itself is outside the claimant's RFC, as the ALJ found the claimant was capable of much less than light work. Furthermore, the claimant is correct that this job, truck driver, is outside his RFC as it relates to his social functioning and skill level, i.e., it requires computer knowledge and the ability to communicate with others. Ultimately, the claimant has failed to show the court that he could not meet the specific requirements for a job as an *escort vehicle driver*.

Likewise, the claimant has failed to convince the court that the VE's determination that he could perform the job of optical driller was erroneous. Concerning this job, the VE stated:

> This involves the ability to tend a bench-mounted single-spindled drill press. It's sedentary exertion-level work. It's unskilled entry-level work, and it, too, would involve no interaction with the general public, limited interaction with co-workers, and would otherwise fall within the parameters of the hypothetical.

Again, the claimant has failed to convince the court that the job of "optical instruments assembler" is in any way comparable to the job proffered by the VE. Indeed, the O*NET listing of "Generalized Work Activities" for an optical instruments assembler provided by the claimant clearly indicates that this job has education and skill requirements above the claimant's qualifications.

Lastly, the claimant's attorney had an opportunity to cross-examine the VE regarding his selection of jobs, but failed to do so. *See Carey*, 230 F.3d at 146-47. Based on this, the court finds that the VE's testimony was sufficient and that the Commissioner met his burden at step 5.

### 5. Claimant's Noncompliance With Treatment

For his final ground, the claimant appears to argue that the ALJ erroneously based his disability determination on the claimant's non-compliance with mental health treatment. Specifically, the claimant contends that his poverty constituted good cause for his failure to comply with his mental health treatment. The claimant appears to rely upon the regulations which provide that a claimant will not be found disabled if he fails to follow prescribed treatment without a good reason. *See* 20 C.F.R. § 416.930. However, the court finds the claimant's reliance upon this authority is misplaced. During the administrative hearing, in response to the ALJ's question about why he had failed to seek further mental health treatment, the claimant responded that he could not afford it. When the ALJ asked him if he had looked into low cost options, the claimant replied that it was even hard for him to come up with money for the lower costs. In his opinion, the ALJ pointed out that despite the claimant's alleged poverty, medical records revealed that he was able to support a cigarette habit. The court finds that it was proper for the ALJ to rely upon this evidence to determine that the claimant's statements about his

16

poverty were less than credible. Accordingly, the court accords great deference to the ALJ's credibility determination. *See Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000). Nevertheless, as found above, the ALJ's disability determination was not based only upon the claimant's noncompliance with his mental health treatment, but upon the record as a whole. Because the record amply supports the ALJ's conclusion, this ground should be dismissed as well.

## IV. RECOMMENDATION

Based on the foregoing findings and conclusions, it is recommended that the Commissioner's decision be affirmed.

The parties are referred to 28 U.S.C. §636(b)(1)(B) and Fed. R. Civ. P. 72(b) for the appropriate procedure in the event any party desires to file objections to these findings and recommendations. Objections are required to be in writing and must be filed within fourteen (14) days of this date and "a party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within ten days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court . . . ." *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*) (citations omitted).

Respectfully submitted this 6th day of April, 2010.

/s/ David A. Sanders  
UNITED STATES MAGISTRATE JUDGE